## BALLMANN *v.* FAGIN.
## BALLMANN *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Nos. 240, 308.   No. 240 argued May 8, 1905.—No. 308 submitted November 27, 1905.—Decided January 2, 1906.

Where a witness is subpœnaed to produce a cash book showing transactions with certain specified persons a charge of contempt in failing to produce a cash book must be confined to a failure to produce one showing transactions with such persons.

The fact that the witness has denied the existence of a cash book showing transactions with certain specified persons does not debar him, when ordered in general terms to produce his cash book, from pleading his privilege to refuse to testify because it might incriminate him.

A person against whom criminal proceedings are pending is no more bound to produce books of account than to give testimony to the facts which they disclose.

THE facts are stated in the opinion.

*Mr. Lawrence Maxwell, Jr.,* with whom *Mr. Miller Outcalt* and *Mr. Thomas F. Shay* were on the brief, for appellant:

The appeal was properly taken to this court under § 5, act of March 3, 1891.

The question whether the witness was required to answer the questions propounded to him by the grand jury involves the construction and application of the Fifth Amendment of the Constitution of the United States, and the claim was made in his petition for the writ of *habeas corpus* that his commitment in that respect and others was in contravention of the Constitution. *Counselman* v. *Hitchcock,* 142 U. S. 547; *Horner* v. *United States, No.* 2, 143 U. S. 570; *Dimick* v. *Tompkins,* 194 U. S. 540; *Craemer* v. *Washington,* 168 U. S. 124.

If Ballmann was protected by the Fifth Amendment from answering the questions, the order committing him for refusing to answer is void, and he is entitled to be released on *habeas corpus. Ex parte Fisk,* 113 U. S. 713; *Ex parte Ayers,* 123 U. S. 443, 485.

There was no evidence and no circumstances before the District Court to justify it in rejecting the sworn statement of the witness that an answer to the questions might criminate him.

The witness is not obliged to say of what offense he has been guilty or in what way an answer might lead to his detection or conviction, for that would defeat the very object of the privilege. *Lewisohn* v. *O'Brien,* 176 N. Y. 253; *Taylor* v. *Forbes,* 143 N. Y. 219; *United States* v. *Burr,* Fed. Cas. 14,692e; *Janvrin* v. *Scammon,* 29 N. H. 290; *Temple* v. *Commonwealth,* 75 Virginia, 892; *Re Kantner,* 117 Fed. Rep. 356; *Chamberlain* v. *Willson,* 12 Vermont, 491; *Warner* v. *Lucas,* 10 Ohio 336.

See *Lawson* v. *Boyden,* 160 Illinois, 613, as to rule on the burden of proof. A witness cannot be deprived of his privilege, on the ground that the offense is barred by limitation, unless it appears affirmatively that no prosecution is pending against him. See also 29 Am. & Eng. Ency. of Law, 842; *Bank* v. *Henry,* 2 Denio, 156; *Henry* v. *Bank,* 1 N. Y. 87; *Southern Ry. News Co.* v. *Russell,* 91 Georgia, 808; *Marshall* v. *Riley,* 7 Georgia, 372; *Matter of Tappan,* 9 How. Pr. 395.

The evidence before the District Court suggested that an

answer to the questions or the production of his books might implicate the witness in several ways.

A witness who claims the privilege of silence is not required to admit that he is guilty. The protection of the Constitution is for the innocent as well as for the guilty. *People* v. *Forbes*, 143 N. Y. 219.

A witness or party in a Federal court is entitled to protect himself against self-crimination under a law of the State in which the court is sitting. *United States* v. *Saline Bank*, 1 Pet. 100. See statute of Ohio against bucket shops, passed February 7, 1899, 86 Ohio Laws, 12; 3 Bates' Annotated Ohio Stat., 4th ed., pp. 3350, 6931, 6934, § 1. Suits under §§ 4271–4276 are actions for penalties. *Cooper* v. *Rowley*, 29 Ohio St. 547.

It is immaterial that the answer of the witness could not be used against him directly. It is enough that it might lead to incriminating disclosures. *Counselman* v. *Hitchcock*, 142 U. S. 547, and in cases approved; *Emery's Case*, 107 Massachusetts, 172.

Where there is no legal evidence to sustain the conviction for contempt for failing to produce a cash book the petitioner is entitled to be discharged on *habeas corpus*. *Watts & Sachs*, 190 U. S. 1, 35; *Iasigi* v. *Brown*, 1 Curtis, 401; Langdell, Eq. Pl., § 211; *Hall* v. *Young*, 37 N. H. 134; *Baggott* v. *Goodwin*, 17 Ohio St. 76, 81.

In order to convict the defendant it was necessary for the Government to prove that a book answering the description of the subpœna was in existence and under his control on April 7. There was no evidence of this fact or of the existence or possession of any cash book after April 3. *Electric Co.* v. *Westinghouse Co.*, 129 Fed. Rep. 105, and cases cited 106.

The presumption of the innocence of the accused has relation to every fact that must be established to prove guilt beyond a reasonable doubt. *Kirby* v. *United States*, 174 U. S. 55; *Coffin* v. *United States*, 156 U. S. 432.

Conjecture cannot take the place of proof. *Chaffee* v. *United States*, 18 Wall. 516.

The court below overlooked the fact that it was forbidden by the act of March 16, 1878, c. 37, 20 Stat. 30, from indulging any presumption against the defendant because he did not testify, and that the court was precluded by § 860, Rev. Stat., from using against him his testimony before the grand jury that he never used a cash book. The District Court found that he was guilty because he did not prove that he was innocent.

Testimony was improperly received under § 860. *Tucker* v. *United States*, 151 U. S. 164.

The order directing Ballmann to produce all books and papers in his control, was repugnant to the Fourth Amendment. *Ex parte Brown*, 72 Missouri, 83; *Ex parte Clarke*, 126 California, 235.

The order of April 8, requiring the defendant to produce a cash book, was unlawful under the Fourth and Fifth Amendments.

Whenever a witness is excused from giving testimony upon the ground that an answer might criminate him, he cannot be compelled to produce books or papers which would have that effect. *Lawson* v. *Boyden*, 160 Illinois, 613, 618; *Boylen* v. *Smithman*, 146 Pa. St. 255, 274; *Boyd* v. *United States*, 116 U. S. 616; 3 Wigmore, Evidence, § 2264.

*The Solicitor General* for the United States:

The guarantee of the Fourth Amendment was founded on resistance to unwarrantable intrusion by *executive* agents. "General warrants," not naming persons or things, were finally overthrown in the cases of *Wilkes* and *Entick*. Cooley, Const. Lim., 7th ed., 426, 428; *Wilkes Case*, 2 Wils. 151; 19 State Trials, 1405; *Entick* v. *Carrington*, 2 Wils. 275; 19 State Trials, 1030. In America the chief abuse was by writs of assistance from the courts to revenue officers. John Adams' Work, vol. II, 523; 4 Bancroft's Hist. U. S., 414; Quincy Rep. (Mass.)

51, and App., p. 395, for history of writs of assistance, by Mr. Justice Gray; *Boyd* v. *United States, infra.;* 2 Story, Const., 5th ed., § 1901. Such evils have disappeared, and the remedy of the constitutional guarantee must be construed in the light of its origin and purpose, and must not be enlarged beyond its true scope.

The rule of the Fifth Amendment appears first in' the canon law phrase. *Nemo tenetur seipsum prodere* (or *accusare*), which grew out of the heresy trials in England early in the seventeenth century.

This court has, however, found an intimate connection between the two Amendments, *Boyd* v. *United States,* 116 U. S. 616, and held that where the thing forbidden in the Fifth Amendment—compelling a man to be a witness against himself—is the object of a search and seizure of his private papers, it is an unreasonable search and seizure within the Fourth Amendment.

In the present case there is neither seizure, search nor arrest.

As to the extent of the protection afforded by the Fifth Amendment see *Counselman* v. *Hitchcock,* 142 U. S. 547; *Interstate Commerce Comm.* v. *Brimson,* 154 U. S. 447; 3 Wigmore, Evidence, 2967; *Brown* v. *Walker,* 161 U. S. 591, in which the danger of extending *Counselman* v. *Hitchcock* was pointed out.

This case is readily distinguishable from the *Counselman case.* There the question related to transactions with which Counselman was manifestly connected and which were under investigation by the grand jury. But Ballmann's real apprehension seems to be that his previous answers will be shown to be untrue.

Perjury is not privileged. It has always formed an exception in immunity statutes. Section 860, Rev. Stat.; Rev. Stat. Kentucky § 1973; *Commonwealth* v. *Turner,* 33 S. W. Rep. 88; Corrupt Practices Acts, 15, 16 Vict., c. 57; 26, 27 Vict., c. 29; *Queen* v. *Hulme,* L. R. 5 Q. B. 377. See also *State* v. *Faulkner,* 75 S. W. Rep. (Mo.) 116; *Mackin* v. *People.*

115 Illinois, 312.    Irresistible considerations of public policy, which underlie the law, demand that false swearing shall be punished, and that false swearing shall not block the machinery of justice.

Barring perjury, it does not appear that direct answers to the questions asked could possibly criminate him.    It is for the court to determine, in the first instance, whether a direct answer could criminate the witness.    He is not the sole judge of the matter, and his mere statement that a direct answer would criminate him is insufficient.    For the English rule, see *Reg.* v. *Boyes,* 1 Best. & Smith, 329; *Ex parte Reynolds,* 20 Ch. Div. 294; Best's Law of Evidence, § 128.    For the American rule, see 1 Robertson's Burr's Trials, Phila., 1808, 205, 246, and 25 Fed. Cas. No. 14,692e; Greenleaf on Evidence, § 451; *Irvine's case,* 74 Fed. Rep. 954; *United States* v. *Miller,* 2 Cr. C. C. 247; *Sanderson's Case,* 3 Cr. C. C. 638; *United States* v. *McCarthy,* 18 Fed. Rep. 87; *Stevens* v. *State,* 50 Kansas, 712; *Ford* v. *State,* 29 Indiana, 541; *Minters* v. *People,* 139 Illinois, 363; *People* v. *Mather,* 4 Wend. 229, 254; *Ex parte Senior,* 37 Florida, 1, 20; *Richman* v. *State,* 2 Green (Iowa), 532; *Printz* v. *Cheeney,* 11 Iowa, 469; *La Fontaine* v. *Southern Underwriters,* 83 N. Car. 132, 141; *Floyd* v. *State,* 7 Texas, 215; *Miskimmons* v. *Shaver,* 8 Wyoming, 392, 418.

In nearly all, if not all, the cases in which the privilege was allowed it was apparent from the question asked that a direct answer would criminate.    While not discussing whether it is for the court or the witness to determine if an answer would criminate him, it is regarded as a matter for the court.    See *The King* v. *Gordon,* 2 Doug. K. B. Rep. 593; *Paxton* v. *Douglas,* 19 Ves. Ch. 224; *Maloney* v. *Bartley,* 3 Campb. 210; *Cates* v. *Hardacre,* 3 Taunt. 424; *Rex* v. *Pegler,* 5 C. & P. 687; *Fisher* v. *Ronalds,* 16 Eng. Law & Eq. 417; *Emery's Case,* 107 Massachusetts, 172; *In re Graham,* 8 Ben. 419; *Bank* v. *Henry,* 2 Den. 155; *Taylor* v. *Seaman,* 8 Misc. N. Y. 152; *Cullen* v. *Commonwealth,* 24 Gratt. 624; *Smith* v. *Smith,* 116 N. Car. 386; *Lester* v. *Boker,* 6 Blackf. (Ind.) 439; *Johnson* v. *Goss,*

2 Yerg. (Tenn.) 110; *Lea* v. *Henderson*, 1 Coldw. (Tenn.) 146; *Ex parte Clarke*, 103 California, 352.

No connection appears between the questions asked and the proceedings against Ballmann in the Ohio courts based upon his alleged violation of the gambling laws of the State. Direct answers would be that a cash book was referred to and that he used a cash book in his business. It is perfectly lawful to keep and use a cash book in one's business. If the cash book contained criminating evidence, he might doubtless refuse to produce it. But that is not his defense. His contention is merely that it is not now in his possession or under his control, and was not at the time of the service of the subpœna.

The findings of the trial court are conclusive, if there was any competent evidence to support them. *Davis* v. *Schwartz*, 155 U. S. 636; *Grayson* v. *Lynch*, 163 U. S. 472. That there was such evidence is apparent.

The right of Ballmann to control any book used in the conduct of his business cannot be doubted. The existence of the book having been both admitted and proved, it was incumbent upon him to produce it or account for its absence. This is not to require him to establish his innocence.

Nor was he entitled to the benefit of § 860, Rev. Stat., in respect to the ledger which he voluntarily produced or statements which he voluntarily made. *Tucker* v. *United States*, 151 U. S. 164; *United States* v. *Kimball*, 117 Fed. Rep. 156.

MR. JUSTICE HOLMES delivered the opinion of the court.

One of these cases is a writ of error issued by this court to the United States District Court upon a judgment committing the plaintiff in error for contempt, the other an appeal from the Circuit Court for the same district upon a judgment denying the writ of *habeas corpus*, which was applied for on the ground that the same commitment was void.

The case so far as material to our decision, is as follows: On

April 7, 1905, Ballman was served with a subpœna to appear before the grand jury and to bring with him "cash book, ledger, letter press copy book, and all sheets showing transactions under the name of A. Smith and A. Johnson during the months of December, 1904, and January and February, 1905." He appeared before the grand jury, and on the same day the grand jury reported his failure to produce the books and papers called for by the subpœna. The court entered an order as of that day, April 7, that he should produce all books and papers pertaining to his business. On April 8 the grand jury filed charges of contempt against him, in that "being required by said subpœna to produce a certain cash book in use in his business" he refused to do so, and also that he refused to answer the following questions: (*a*) "State what on account No. 140, sheet # 1, on this big ledger now in use in your business, these figures under the word 'folio,' on the debit side of the account, to wit: No. 349, 349, 349, 349, 349, and 351 refer to?" (*b*) "Do not these figures 349 in your handwriting, on account No. 140, refer to the folios in your cash book in use in your business in January, 1905?" On the same day, April 8, the court, after hearing evidence, ordered Ballmann to produce the said cash book and to answer the above questions at noon on April 10, or to be committed to jail until compliance or discharge by due process of law.

On April 10 Ballmann appeared and made the following answers: "I have not now, and neither at the time of nor at any time since the service of the first subpœna upon me in this matter have I had in my possession or under my custody or control the book referred to in the order of the court entered on April 8, 1905, or any book showing transactions under the names of A. Smith or A. Johnson, and am unable to produce the same."— "I decline to answer the questions contained in said order of April 8, 1905, on the ground that it might tend to criminate me and in this connection I produce copy of a petition filed against me and others by Emanuel Oppenheimer in the court of common pleas of Hamilton county, being case No. 126,824, and I state that there are many other actions of the same kind pend-

ing against me." The petition referred to charged Ballmann and others with conducting a scheme of gambling known as a "bucket shop," criminal conduct under the laws of Ohio, the State where the case was being tried.

Thereupon, upon the same day, the court, without hearing further evidence, reciting its former order and Ballmann's failure to comply with it, ordered him to be imprisoned in accordance with the same. Afterwards a bill of exceptions was allowed, which set forth the proceedings of April 8. It appears that on that day the foreman of the grand jury testified that Ballmann was inquired of with reference to the cash book, and said that there was no such book. (It is fair to read the statement as meaning the same as his formal answer on the 10th and no more.) Other witnesses gave evidence tending to prove the existence of a cash book, although not, or at least not except by very remote inference, a cash book showing transactions under the name of A. Smith or A. Johnson. It also appears that Ballmann's counsel said to the court, "As to the book, we say to your honor that we haven't got it" and also handed the court a paper from Ballmann, reading, "As to the questions asked, I refuse to answer, as they might tend to criminate me."

It appears to us, and it hardly is denied, that the charge of contempt in failing to produce a book, is confined, as it was taken by Ballmann's answer to be confined, to a failure to produce a cash book showing transactions under the name A. Smith or A. Johnson. We assume that the commitment was upon the charge and the order of April 8, not upon the order entered as of April 7. Upon that assumption it might be enough to say that the court was not warranted in finding Ballmann guilty by any evidence which it had before it. There was nothing to show that his answer was not literally true. *In re Watts & Sachs*, 190 U. S. 1, 35, 36. But we need not stop there. Suppose that Ballmann had in his possession a book, which he was privileged from producing and which he wished not to produce. Suppose, also, that he were summoned as he was in this case, and that the book did not show the dealings

described, he could not be criticized very severely for avoiding, if possible, the discrediting claim of privilege, by an answer literally exact.    If then he should be asked in general terms to produce his cash book he would not be debarred from pleading his privilege by what he had said before.    And without any inclination to enlarge a witness' rights beyond the settled requirements of law, we think that the privilege might extend to any question, the manifest object of which was to prove possession or control as a preliminary to calling for the book.

To determine whether the case which we have supposed is the case at bar we must consider whether we can see reasonable grounds for believing that the book was privileged, or that it was not—it does not matter for our purposes in which form the question is put.    The subject under investigation, according to the Government's statement, was the criminal liability of some employé of a national bank from the vaults of which a large amount of cash had disappeared.    The book very possibly may have disclosed dealings with the person or persons naturally suspected, and, especially in view of the charges that Ballmann kept a "bucket shop," dealings of a nature likely to lead to a charge that Ballmann was an abettor of the guilty man.    If he was, he was guilty of a misdemeanor under Rev. Stat. § 5209, and no more bound to produce the book than to give testimony to the facts which it disclosed.    *Boyd* v. *United States*, 116 U. S. 616; *Counselman* v. *Hitchcock*, 142 U. S. 547.

Not impossibly Ballman took this aspect of the matter for granted, as one which would be perceived by the court without his disagreeably emphasizing his own fears.    But he did call attention to another less likely to be known.    As we have said, he set forth that there were many proceedings on foot against him as party to a "bucket shop," and so subject to the criminal law of the State in which the grand jury was sitting.    According to *United States* v. *Saline Bank*, 1 Peters, 100, he was exonerated from disclosures which would have exposed him to the penalties of the state law.    See *Jack* v. *Kansas*, 199 U. S. 372, decided this term.    One way or the other we are of opinion

that Ballmann could not be required to produce his cash book if he set up that it would tend to criminate him.

But it is said that he did not set it up, but on the contrary denied the existence of the book. We are not of that opinion. We think that he was giving an answer which, whether too sharp or not, might be true even if he had a cash book within his control. His denial was limited explicitly and with no disguise in the form of statement to a cash book showing transactions under the name A. Smith or A. Johnson. It called attention to the limit by its form. And when thereupon he was asked questions, the manifest meaning of which was to fasten upon him an admission that there was a cash book, he at once declined to answer. Of course it may be that he declined because he knew that further answers would disclose the falsity of his first denial. But the natural explanation of the claim of privilege is that a cash book existed, that Ballmann knew it, and that he believed that if produced it would criminate him in one of the two ways which we have explained. Nothing more need be said about the questions as distinguished from the production of the book. See *Counselman* v. *Hitchcock*, 142 U. S. 547.

We are aware that the courts below came to their conclusions upon the assumption that Ballmann denied generally the possession of a cash book, and that he was before the court for disobedience to an order to produce it. It may be that he now escapes liability as much by luck as by desert. But he is entitled to demand a judgment according to the record, and we are of opinion that on the record fairly construed the judgment of the District Court should be reversed. This decision makes any other than formal action upon the *habeas corpus* unnecessary, and therefore the judgment of the Circuit Court may be affirmed for the purpose of ending the case.

*Judgment of the District Court reversed.*
*Judgment of the Circuit Court affirmed.*

Mr. Justice Harlan and Mr. Justice McKenna dissent.