Samuel H. Hofstadter, J.
In view of the letter of counsel for plaintiff, dated Jánuary 15, 1964, the memorandum of January 13, 1964 is recalled. In lieu thereof, the court substitutes the following: !
*293 The motion to consolidate this action with that pending in this court entitled Benjamin Meiselman and Rachel Meiselman v. Oliver D. Appleton, et al., and to enjoin any further actions for similar relief is granted, there being no opposition thereto. Pursuant to the request of the plaintiffs in both actions, Sidney B. Silverman, Esq., is designated as general counsel. The notice of examination before trial, dated September 13, 1963, in the Meiselman action is, pursuant to the stipulation of the parties dated December 27, 1963, vacated, reserving to plaintiff the right to serve a new notice.
Defendant McGinnis also moves for an order vacating the notice dated December 9, 1963, served pursuant to rule 3120 of the Civil Practice Law and Rules, for the discovery and production of documents at the offices of counsel for plaintiff, upon the ground that the compulsory production of these documents would violate his constitutional privilege against possible self incrimination.
In his letter of January 15, 1964, counsel for plaintiff waives the requirement that the privilege be claimed personally by defendant McGinnis and accepts in its place the claim of privilege made on behalf of Mr. McGinnis by his attorney. He requests a determination by this court on the merits as to whether the privilege against self incrimination is available in the situation disclosed.
The notice called upon defendant McGinnis to produce his correspondence with the International Railway Equipment Co. of Boston, his Federal income tax return for 1958, and all correspondence, memoranda or other writings relating to (a) the sale of Boston and Maine Railroad of its assets to International Equipment and (b) the purchase by Boston and Maine of any of the assets of International Equipment.
The notice also calls upon defendant Boston and Maine to produce sundry documents, including cancelled checks in which defendant McGinnis was payee. As to this portion of the notice, defendant McGinnis seeks no relief and defendant Boston and Maine, represented by other counsel, has made no motion to vacate or modify.
The action is brought derivatively by plaintiff as a stockholder of Boston and Maine. The complaint alleges that:
Boston and Maine was formerly incorporated under the laws of Massachusetts, Maine, New Hampshire and New York. In April of 1963, the State of incorporation was changed to Delaware, but the railroad still maintains an executive office in New York City.
*294 The individual defendants, with an exception not here relevant, were directors of the railroad who participated in the wrongful acts alleged in the complaint. Defendant McGinnis, in addition, was chairman of the board and largest single stockholder of the company.
The gravamen of plaintiff’s grievances is a conspiracy to have the railroad sell railroad cars worth a half million dollars for a quarter of a million dollars. Plaintiff alleges that defendant McGinnis received $35,000 for participating in this conspiracy.
The moving affidavit discloses that the facts alleged in the complaint are the subject of a criminal indictment in the United States District Court for the District of Massachusetts, directed among others against defendant McGinnis. The indictment originally contained two counts. The first count has been dismissed on demurrer; but the second remains in force and effect. No immunity has been granted defendant McGinnis in any jurisdiction.
Mr. McGinnis, during the entire period involved in thé complaint, was a New York resident and taxpayer. The railroad, as already noted, was, until April of 1963, incorporated in New York. Thus, sufficient appears to make possible a New York criminal involvement flowing from the facts alleged.
The New York counterpart to the Fifth Amendment of the United States Constitution is contained in section 6 of article I of the New York Constitution. “ No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled in any criminal case to be a witness against himself,” (N. Y. Const., art. I, § 6; see, also, CPLB 4501). The language of the United States Constitution concerning self incrimination is identical (5th Arndt.); and, in construing the New York counterpart, “ the cases construing the Federal Constitution merit attentive scrutiny” (People v. Reiss, 255 App. Div. 509, 510). ■
The United States Supreme Court has called the privilege 1 ‘ a wise and beneficent rule of evidence ” (Twining v. New Jersey, 211 U. S. 78, 106). The Court of Appeals has said: “ While the guilty may use the privilege as a shield it may be the main protection of the innocent ” (People ex rel. Taylor v. Forbes, 143 N. Y. 219, 231). In another context, I had occasion to note that in an ultimate sense, it can be said that the privilege is at least cognate to “ due process ”. For even if the concept was not originally in the category of “ the law of the land ”, it is well within its nimbus. The privilege had its origin in a protest against the evil procedures of the Star Chamber — torture, *295 inquisition without charge, compelled testimony. The parliamentary act abolishing this court declared that its actions were contrary to ‘ ‘ due process of law ’ ’ and the ‘ ‘ law of the land ’ ’.
It is sufficient to make the privilege applicable that the testimony may provide the clues or links by which the guilt of the witness may be established (Hoffman v. United States, 341 U. S. 479). 11 It is enough, to wake the privilege into life, that there is a reasonble possibility of prosecution, and that the testimony, though falling short of proving the crime in its entirety, will prove some part or feature of it, will tend to a conviction when combined with proof of other circumstances which others may supply ” (Matter of Doyle, 257 N. Y. 244, 256). The privilege may be claimed in civil cases (McCarthy v. Arndstein, 266 U. S. 34).
The witness himself is the judge in each case — he may not be compelled to give testimony which he himself in good faith believes might, in any manner whatever, pave the way to possible prosecution (United States v. Burr, 1 Burr’s Trial [Robertson] 244; Counselman v. Hitchcock, 142 U. S. 547; People ex rel. Taylor v. Forbes, 143 N. Y. 219, supra).
Plaintiff argues, however, that the privilege operates only in the forum in which the witness is or may be subject to criminal penalties; that, consequently, defendant McGinnis cannot assert the privilege in this court since the indictment was found in the United States District Court in Massachusetts. The cases she cites concern grants of immunity — the form of amnesty which is the traditional device to obtain the testimony of witnesses who claim the privilege. Although the rules applicable to these opposite sides of the subject of compulsory testimony are similar, they are not necessarily coextensive.
When the State has granted the witness a full pardon within its own competency, it may not be denied his evidence. The converse does not automatically follow. Before having freed him of potential danger, absent a showing that the danger of self incrimination in that jurisdiction is not a real and substantial one, the community may not be heard to say that he is entirely free from risk (Frad v. Columbian Nat. Life Ins. Co., 178 Misc. 705, affd. N. Y. L. J., March 20, 1942, p. 1195, col. 5 [App. Term, 1st Dept.], affd. 264 App. Div. 836; see, also, Ballmann v. Fagin, 200 U. S. 186, 188; United States v. Saline Bank of Virginia, 1 Pet. [26 U. S.] 100; United States v. McRae, L. R. 3 Ch. 79 [1867]).
‘£ Where it is not so perfectly evident and manifest that the answer called for cannot incriminate, as to preclude all reasonable doubt or fair argument, the privilege must be recognized *296 and protected ” (People ex rel. Taylor v. Forbes, 143 N. Y. 219, 231, supra; Woolson Spice Co. v. Columbia Trust Co., 193 App. Div. 346).
The privilege, .properly invoked, extends to the records and documents of the; witness (McCarthy v. Arndstein, 266 U. S. 34, 40-41, supra; Ballmann v. Fagin, 200 U. S. 186, supra; People v. Mandel, 90 Misc. 170).
■Since defendant McGinnis is a New York resident and taxpayer, his freedom from prosecution here is neither evident nor manifest. His indictment in Massachusetts does not prevent his indictment in New York for any part of the conspiracy carried out in this State (Barthus v. Illinois, 359 U. S. 121; Abbate v. United States, 359 U. S. 187). Moreover, assuming that he received the $35,000 and did not report it in his State income tax return, he is subject to the penal provisions of the Tax Law (§ 376).
In this posture of the case he may not he directed to produce his records. Under our tradition of individual freedom, no man may be forced to help convict himself of crime.
Plaintiff’s argument that defendant McGinnis has waived the privilege finds no foundation in the record.
The motion to vacate is granted to the extent of striking items 1, 2 and 3 of the notice to produce documents from the notice.