**UNITED STATES of America, Appellant, and Bernard O. Peller, Special Agent, Internal Revenue Service,**

v.

**Norman H. EGENBERG.**

**No. 18518.**

United States Court of Appeals, Third Circuit.

Argued April 8, 1971.

Decided May 26, 1971.

John M. Brant, U. S. Dept. of Justice, Tax Division, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., Fred B. Lacey, U. S. Atty., on the brief), for appellant.

Norman H. Egenberg, pro se.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The Government appeals from an order of the district court which denied judicial enforcement of twelve Internal Revenue Service summonses issued under authority of Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602 (1964), and Treasury Regulation § 301.7602–1 (T.D. 6421, October 23, 1959, and T.D. 6498, October 24, 1960). The petition to the district court was filed pursuant to Sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 7402(b), 7604(a) (1964).

Appellee Egenberg is a certified public accountant who has prepared tax returns for various taxpayers including several non-resident opera performers who have performed in the United States. Each summons seeks from Egenberg records which an opera performer turned over to him for the purpose of having prepared United States Departing Alien Tax Returns (Form 1040c). These forms are the equivalent of an income tax return.

The petition discloses that the Internal Revenue Service wants the records in connection with an investigation of Egenberg's civil tax liability for the years 1960 through 1966. The support-

ing affidavit by Special Agent Peller alleges that the client records are material to an investigation of Egenberg's tax liability in that the documents will show:

"a). The fees paid by respondent's clients for services rendered;

b). fees or commissions due respondent based on refunds obtained by respondent on behalf of his clients;

c). various business and financial transactions between respondent and his clients relating to matters other than in the preparation of tax returns; and

d). the relationships and transactions between respondent and his clients from which income may have been generated."

In opposition to the petition appellant filed two affidavits. One of these, by an attorney, alleged that Egenberg had appeared on September 19, 1967 before the Special Agent in response to the summonses and had turned over twenty-three documents, representing that he had no other papers in his possession. The other, by Egenberg, disclosed that Egenberg had, on January 15, 1968, been indicted in the Southern District of New York for bribing a tax technician of the Internal Revenue Service. A supplemental affidavit by Egenberg alleged that the purpose of the summonses was to provide information that would be available to the United States Attorney for the Southern District of New York in the pending prosecution.

The district court heard the testimony of Egenberg and of Agent Peller, and had before it the depositions of five of Egenberg's artist clients [1] and one artist's representative.[2] Egenberg admitted having in his possession records belonging to Leonie Rysanek and to Mario Sereni. He denied having in his possession other records covered by the summonses, but that denial is contradicted in several respects by the depositions. He refused to turn over even those records he admitted having, and he refused to identify the representative of Birgit Nilsson to whom he claimed to have delivered her records. He asserted the privilege against self-incrimination, but also testified:

"THE COURT: Mr. Egenberg, how do you claim the Fifth Amendment privilege against self-incrimination in connection with records that do not belong to you? What is the basis for your claim of privilege?

THE WITNESS: I think I am protecting the rights of the taxpayer.

THE COURT: You are? That's what you think?

THE WITNESS: I think so.

THE COURT:

\* \* \* \* \* \*

What about Sereni? You have papers belonging to Sereni.

THE WITNESS: Yes, sir.

THE COURT: They are not your papers.

THE WITNESS: No, sir.

THE COURT: You have no interest in them.

THE WITNESS: Correct.

THE COURT: They belong to Mr. Sereni.

THE WITNESS: Right.

THE COURT: Why aren't they turned over to the Internal Revenue Service?

THE WITNESS: For the same reason.

THE COURT: What reason is that?

THE WITNESS: Protecting the interest of Mr. Sereni."

1. George Bardyguine, Pino Donati, Birgit Nilsson, Leonie Rysanek and Mario Sereni.

2. William L. Stein, artist's representative for Ruza Pospinov.

The record makes clear, however, that none of the clients objected to having their records delivered to the Internal Revenue Service, and some directed such surrender.

Agent Peller testified that the Internal Revenue had tried unsuccessfully to obtain the records from certain of Egenberg's clients. He also testified in detail how he anticipated that the client records would show taxable income to Egenberg not reported. No evidence in the record tends to support the conclusion that the records were desired for use in the then pending bribery case.[3]

The district court on November 10, 1969, entered a memorandum and order refusing to enforce the summonses. It held (1) that there was an insufficient nexus between the records in question and appellant's tax liability, and (2) that his fifth amendment privilege against self-incrimination would be violated by an enforcement order. We hold that the district court erred on both grounds.

In support of its conclusion that there was insufficient nexus between the records in question and appellant's tax liability the court cited United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L. Ed.2d 112 (1964); United States v. De Grosa, 405 F.2d 926 (3 Cir.), cert. denied, 394 U.S. 973, 89 S.Ct. 1465, 22 L.Ed.2d 753 (1969); United States v. Harrington, 388 F.2d 520 (2 Cir. 1968) and Foster v. United States, 265 F.2d 183 (2 Cir.), cert. denied, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959). Summonses were enforced in each of these cases. In United States v. Powell, *supra*, the Supreme Court reversed this court's holding, 325 F.2d 914, that the Government must, in order to obtain an enforcement order, in the enforcement hearing establish probable cause to suspect fraud before records for closed years may be examined. Justice Harlan said:

"For us to impart a probable cause standard to be enforced by the courts would substantially overshoot the goal which the legislators sought to attain. There is no intimation in the legislative history that Congress intended the courts to oversee the Commissioner's determinations to investigate." 379 U.S. at 56, 85 S.Ct. at 254.

"[The Commissioner] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed—* * *." 379 U.S. at 57–58, 85 S.Ct. at 255.

Everything specified in United States v. Powell as prerequisites for enforcement was shown in this case. The holding of *Powell* was reaffirmed by the Supreme Court on January 25, 1971. Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 541, 27 L.Ed.2d 580 (1971). In United States v. Harrington, *supra*, Judge Lumbard, dealing as we are with summonses for records belonging to persons other than the taxpayer, said:

"The question, and it is not always one that lends itself easily to solution, is whether from what the government already knows there exists the requisite nexus between taxpayer and records of another's affairs to make the investigation reasonable—in short, whether the 'might' in the articulated standard, 'might throw light upon the correctness of the return,' is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered." 388 F.2d at 524.

The conclusion of the district court that the Government failed to meet the very

---

3. We are informed that the case has now been concluded.

minimal showing of relevancy required by § 7602 is clearly erroneous. Agent Peller's affidavit and testimony showed a "realistic expectation rather than an idle hope that something may be discovered."

The district court concluded that the client papers would tend to incriminate Egenberg, and that they were protected by his fifth amendment privilege because he possessed them in a personal capacity. The record is clear that such possession as he had was solely for the purpose of preparing, as agent for the clients, tax returns which they were required to file. The summonses did not seek Egenberg's work papers. They sought "books, records, bank statements, cancelled checks, bank books, paid receipts or invoices, and all other records belonging to, owned by and furnished you" by the several clients. Clearly these papers were held by Egenberg in an agency rather than a personal capacity. With respect to some of the papers he has been instructed by the client to surrender them. None of the clients object to their surrender.

■ It is clear that where there is a proper civil purpose a § 7602 summons may be availed of even though there is a strong likelihood of criminal prosecution. See Donaldson v. United States, *supra,* 400 U.S. 517, 91 S.Ct. at 543, 27 L.Ed.2d 580; United States v. Erdner, 422 F.2d 835 (3 Cir. 1970); United States v. De Grosa, *supra*; United States v. Bank of Commerce, 405 F.2d 931 (3 Cir.) It is also clear that Egenberg could not object to a summons served on a third party for records owned by that party which would incriminate him. Donaldson v. United States, *supra.* Nor could Egenberg be compelled, because of his possession of the papers, to give self-incriminatory testimony. United States v. Kordel, 397 U.S. 1, 7, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). The narrow issue is whether his mere possession in an agency capacity is sufficient to bring papers neither owned nor prepared by him within the ambit of his privilege against self-incrimination.

■ The language and history of the self-incrimination clause of the fifth amendment, both of which emphasize the personal nature of the privilege, suggests that the summoning of inanimate objects—papers—should never be prohibited. Cf. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The Supreme Court has never fully departed, however, from the dictum in Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886):

> "And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself."

*Boyd* involved papers owned by the witness, but prepared by someone else. Ballmann v. Fagin, 200 U.S. 186, 26 S.Ct. 212, 50 L.Ed. 433 (1906), citing *Boyd,* recognized the privilege of a witness not to testify about the location of a book which might incriminate him. In Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), the Court construed *Boyd* narrowly. It required a corporate officer to produce the corporate records because the corporation had no fifth amendment privilege. It required the officer to testify because he had been granted immunity. In Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), the court held that a corporate officer not immunized from prosecutions must nevertheless comply with a subpoena duces tecum for the production of corporate books in his possession.

> "The appellant asserts his privilege against self-incrimination. There is no question, of course, of oral testimony, for he was not required to give any. Undoubtedly it also protected him against the compulsory production of his private books and papers. Boyd v. United States, *supra*; Bollman v. Fagan, 200 U.S. 195 [26 S.Ct. Rep. 212, 50 L.Ed. 433] [sic]. But did it extend to corporate books?" 221 U.S. at 377, 31 S.Ct. at 543.

"It is at once apparent that the mere fact that the appellant himself wrote, or signed, the official letters copied into the books, neither conditioned nor enlarged the privilege. Where one's private documents would tend to incriminate him, the privilege exists although they were actually written by another person. And where an officer of a corporation has possession of corporate records which disclose his crime, there is no ground upon which it can be said that he will be forced to produce them if the entries were made by another, but may withhold them if the entries were made by himself." 221 U.S. at 378, 31 S.Ct. at 543.

"They may decline to utter upon the witness stand a single self-incriminating word. They may demand that any accusation against them individually be established without the aid of their oral testimony or the compulsory production by them of their private papers. But the visitatorial power which exists with respect to the corporation of necessity reaches the corporate books, without regard to the conduct of the custodian." 221 U.S. at 385, 31 S.Ct. at 546.

Two things are significant about Wilson v. United States. The first is its treatment of the *Boyd* and *Ballmann* cases. The court suggests that they are limited in application to private papers. The second is its emphasis on the government's interest in its corporate creature. One could draw from the case a conclusion that only personal papers are protected. A more limited reading might be that only papers of a corporate entity are not protected. Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913) makes clear that a transfer of title to corporate papers to a trustee in dissolution does not bring them within the protection of the trustee's privilege. "They remained subject to inspection and examination when required by competent authority, and they could not have been withheld by Burlin-

game himself on the ground that they would tend to incriminate him." 227 U. S. at 80, 33 S.Ct. at 192. *Grant* does not enlighten, however, on whether *Boyd* created an exception for personal papers or a general rule which *Wilson* qualified for corporate papers only.

This court in United States v. White, 137 F.2d 24 (3 Cir. 1943) divided on the question. The case involved the papers of an unincorporated labor union. Judge Goodrich writing for the majority held that *Wilson* was an exception applicable only to papers of corporate entities. Judge Biggs in dissent emphasized that the *Boyd* rule protected only papers belonging to the witness. The Supreme Court in United States v. White, 322 U. S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) reversed. The opinion of the Supreme Court makes it clear that *Wilson* is not a narrow exception to a basic rule protecting papers because they are in the possession of a witness who may be incriminated. The Court's opinion emphasizes that the constitutional privilege is a personal one, applying only to natural individuals. It indicates that papers belonging to a group, which as such has no privilege, may not be withheld even though, technically, the witness may by virtue of membership in the group, have some title to the papers.

"The documents he sought to place under the protective shield of the privilege were official union documents held by him in the capacity as a representative of the union. No valid claim was made that any part of them constituted his own private papers. He thus could not object that the union's books and records might incriminate him as an officer or as an individual." 322 U.S. at 704, 64 S.Ct. at 1254.

■ United States v. White is dispositive of the claim that a mere possessory interest brings papers within the ambit of the witness's privilege. Where, as here, a third party has a superior right to possession of the papers, the witness cannot withhold them. This is the view

expressed in the American Law Institute Model Code of Evidence, Rule 206:

"No person has a privilege under Rule 203 [self-incrimination] to refuse to obey an order made by a court to produce for use as evidence or otherwise a document, chattel or other thing under his control constituting, containing or disclosing matter incriminating him if the judge finds that, by the applicable rules of the substantive law, some other person or a corporation, or other association has a superior right to the possession of the thing ordered to be produced."

One other group of cases is worthy of note. It has been held that even personal papers must be surrendered to a trustee in bankruptcy by a bankrupt despite the fact that they may incriminate the bankrupt. Ex parte Fuller, 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923). Those personal papers, transferred to the trustee by operation of the substantive law of bankruptcy, may be used against the bankrupt in a criminal case. Johnson v. United States, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913). This is true despite the fact that the bankrupt may assert the privilege by refusing to testify in a bankruptcy proceeding. McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924). The bankruptcy trustee's superior right to possession removes even personal papers from the *Boyd* rule.

Thus the *Boyd* rule operates in the narrow area of personal papers to which the witness has the right of possession in a personal capacity. It does not apply to papers of third parties held for a temporary agency purpose.

This conclusion is not at variance with the holding of United States v. Cohen, 388 F.2d 464 (9 Cir. 1967) on which the district court relied. There is language in *Cohen* suggesting that mere possession of third party papers is enough to bring those papers within the witness' privilege. That language is inconsistent with the holdings of the Supreme Court and the reasoning of the opinion is unpersuasive.

The order appealed from will be reversed and the case remanded to the district court for the entry of an order granting enforcement of the summonses. The order should cover all records and papers of the designated clients in Egenberg's possession and control. It should not require Egenberg's testimony.