In the Matter of the Grand Jury and Susan Marie **PARKER**, Appellant.

No. 168–69.

United States Court of Appeals
Tenth Circuit.

June 13, 1969.

Walter L. Gerash, of Gerash & Kaiser, Denver, Colo., for appellant.

James R. Richards, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Colorado holding appellant Susan Marie Parker in civil contempt for refusing to obey an order of the court directing her to answer questions propounded to her during a grand jury inquiry into alleged violations of 18 U.S. C. § 2153, sabotage or destruction of war material and war utilities. The investigation was precipitated by the destruction of public service towers in Denver and the surrounding area. As part of the order she was committed to the custody of the attorney general until such time as she answers the questions and purges herself of the contempt. The order did not place a time limit on said custody; however, it is clear that "once the grand jury ceases to function, the rationale for civil contempt vanishes" and she must be released. Shillitani v. United States, 384 U.S. 364, 372, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622.

Appellant-contemnor pursuant to a subpoena made an appearance before the grand jury on April 1, 1969; however, except for answering the preliminary identification questions, she on the advice of her attorney, who was present outside the jury room and with whom she consulted after each question or series of questions, refused to answer all other questions propounded to her on the grounds that her answers might tend to incriminate her. Upon such refusal the government pursuant to 18 U.S.C. § 2514[1] petitioned the district court for an order granting her immunity and instructing her to respond. The court after holding a hearing issued the requested order. The order dated April 2, 1969 in its pertinent part reads:

"[T]he witness is not excused from testifying or producing evidence on the ground that the testimony or evidence required of her may tend to incriminate her or subject her to a penalty or forfeiture, and it is further

ORDERED that the witness shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which she is compelled, after having claimed her privilege against self-incrimination, to testify or produce evidence, and no testimony or evidence compelled under this order shall be used in any criminal proceeding against her

---

1. 18 U.S.C. § 2514 provides that:

"Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

in any court, state or federal, excepting prosecutions for perjury or contempt committed while giving testimony or producing evidence under the compulsion of this order."

Following entry of the order the grand jury reconvened and appellant was again questioned where, after stating that she understood the court's order compelling testimony and granting immunity, she again refused to testify. Appellant was then brought before the district court for the second time where, again being given the opportunity to answer the questions and again refusing to do so, she was found to be in civil contempt of the court.

 The order, which was as extensive as the court had the power to grant, specifically granted immunity from both federal and state prosecution and accordingly adequately protected her against the danger of self-incrimination in all courts within the United States. Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L. Ed.2d 678; Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249; United States v. Coplon, 6 Cir., 339 F.2d 192. Appellant in her appeal to this court concedes this, as indeed she must, but argues that her refusal to testify was justified due to the danger of incrimination in a foreign jurisdiction, Canada. She contends that certain of the questions propounded to her,[2] if answered, would furnish a link in a chain of evidence needed to prosecute her for an extraditable Canadian crime. At the onset it is important to note that appellant not only refused to answer those questions which

if answered in the affirmative would place her in Canada and thereby have some potential impact on the risk of prosecution for crimes committed therein but all of the questions put to her. And even if it could be said that answers to the questions inquiring into a trip by her to Canada would incriminate her in Canada, which for reasons shortly to be spelled out we feel it could not, answers to the questions directly relating to the destruction of public service towers in Denver and the surrounding area and from which she was granted complete immunity within the United States could not present a danger of incrimination in either the United States or Canada, and her refusal to answer said questions was clearly not justified. It cannot be inferred from the mere fact that an individual was involved in a crime in one country that he was involved in a like or related crime in another country.

 Rule 6(e),[3] Fed.R.Crim.P., with an exception not applicable herein, prevents disclosure of matters occurring before the grand jury unless otherwise ordered by a federal court and since for a court to so order under the circumstances presented in the subject case would defeat one of the purposes for grand jury secrecy, i. e. the encouragement of free disclosure by those who have information of crimes, United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077, as well as the court's "promise" of immunity, it cannot be assumed that a court would grant such an order or accordingly that there is a danger of incrimination. By virtue of the application of Rule 6(e) any evidence,

2. "Q. Did you and those three other persons after January 31, 1969, travel to Canada?"
"Q. Were the four of your [sic] present in Ravelstock, British Columbia, on February 6, 1969?"

3. Rule 6(e) in its pertinent part reads: "Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. * * *"

inculpatory or otherwise, related by appellant during the grand jury proceeding would be unavailable to the Canadian government in either an extradition proceeding in the United States or in a criminal proceeding in Canada.

■ The protection offered by the self-incrimination clause of the fifth amendment although fundamental to our concept of justice "must be confined to instances where the witness has reasonable cause to apprehend danger [of incrimination] from a direct answer. [citations omitted.] The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118.

■ However the trial court did not specifically find that particular questions propounded to appellant would not tend to incriminate her in Canada nor that the particular circumstances of this case would provide procedural safeguards against incrimination. Consequently appellant argues that the impact of the court's coercive order is premised on the proposition that the fifth amendment provides no shelter for appellant against incrimination in a foreign jurisdiction when applied to the provisions of 18 U.S.C. § 2514. We agree that in the present posture of this case such is, indeed, the effect of the trial court's ruling and order. And we unhesitatingly hold that such ruling is correct.

It is true that Mr. Justice Goldberg, writing for the majority in *Murphy, supra,* traced the history and importance of the privilege against self-incrimination and in so doing indicated approval of some early English cases where the privilege was thought applicable to a "foreign jurisdiction" or "country." But the Justice's reference to such cases was simply by way of argumentative analogy to this nation's state-federal relationship and carries no further

persuasion. The fifth amendment was intended to protect against self-incrimination for crimes committed against the United States and the several states but need not and should not be interpreted as applying to acts made criminal by the laws of a foreign nation. The ideology of some nations considers failure itself to be a crime and could provide punishment for the failure, apprehension, or admission of a traitorous saboteur [4] acting for such a nation within the United States. In such a case the words "privilege against self-incrimination," engraved in our history and law as they are, may turn sour when triggered by the law of a foreign nation.

Affirmed.

---

4. We are in no way referring by this phrase or this part of the opinion to the appellant as an individual. Appellant is a young girl whose conduct is inexplicable from the record and we have no way to know her subjective reasoning.