**In the Matter of Contempt Proceedings Against Grand Jury Witness James Frederick WEIR, Jr.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Frederick WEIR, Jr., Defendant-Appellant.**

**No. 74–1439.**

United States Court of Appeals, Ninth Circuit.

April 19, 1974.

---

H. Peter Young (argued), Venice, Cal., for appellant.

Elizabeth Meyer (argued), Dept. of Justice, Harry D. Steward, U. S. Atty., San Diego, Cal., for appellee.

## OPINION

Before CHAMBERS, GOODWIN and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Weir was cited for civil contempt for failing to answer questions before a grand jury subsequent to a grant of immunity. We affirm.

Weir alleged in his uncontradicted affidavit that he had been captured by Mexican officials in Mexico, had been threatened and tortured and, as a result, had confessed orally and in writing to being involved in a marijuana smuggling scheme. He also alleged that United States officials in Mexico were involved with the Mexican officials in that (1) while he was being interviewed by an agent of the "Federal Bureau of Narcotics," Mexican officials threatened him and slapped his face; (2) that the American agent had a copy of his prior written confessions; (3) that this agent stated to Mexican officials that more money would be paid to secure those higher up than Weir; and (4) that he was advised by another United States official that his release might be arranged if he cooperated.

Weir was subsequently released and deported to the United States, whereupon he was arrested as a material witness, admitted to bail and subpoenaed to testify before the grand jury. He declined to answer questions, claiming his Fifth Amendment privilege, and was then granted use immunity, over his objection. Upon his return to the grand jury, he still refused to answer questions, which resulted in his being held in civil contempt and sentenced to be incarcerated until he purged himself by testifying.

Weir claims he has just cause not to answer the questions because they were based upon a coerced confession. We believe this avenue of attack was foreclosed by United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), in which the Court held that a grand jury witness may not complain that a grand jury inquiry was based upon materials secured by a search and seizure which violated the Fourth Amendment.

Weir claims *Calandra* is distinguishable because here we deal with the Fifth rather than the Fourth Amendment. In both instances, the alleged constitutional abridgment occurred prior to the grand jury proceeding. In both, the inquiry in the grand jury proceeding stemmed from the information which was alleged-

ly secured in violation of the Constitution. To accept Weir's claim, we would need to elevate the Fifth Amendment over the Fourth Amendment. This we cannot do without more authoritative direction. In *Calandra,* the Court did state, however, that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted . . . on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination." *Id.* at 345, 94 S.Ct. at 618.

Weir next contends, citing Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), that the brutal treatment which produced incriminating statements should require the court, as a matter of due process, to allow him to assert his privilege. However, one can also conceive of brutality which could be inflicted in relation to Fourth Amendment violations and there is no hint in *Calandra* that such would obviate application of the *Calandra* rule.

If what Weir charges is true, it is reprehensible and revolting. But the alleged confessions are not being used to incriminate Weir. Because of the use immunity granted, he cannot incriminate himself by answering the questions. In the grand jury room there is no illegal coercion. He is now many miles away from and has a border between him and the Mexican officials whom he charges with torture. His only fear is a charge of perjury. If he now tells the truth, any charge of perjury based upon prior involuntary statements will result in Weir raising his defense to the alleged coerced confessions. There is no doubt that Weir may defend himself against the use of involuntary confessions, but this is not the time to do so.

Weir next contends that the immunity granted is insufficient to protect him from prosecution in Mexico. The short answer is that the grand jury proceedings are secret, Fed.R.Crim.P. 6, and we cannot assume that the rule will be broken and the proceedings disclosed to the Mexican government.

Weir filed a motion pursuant to 18 U.S.C. § 3504 seeking disclosure of the results of electronic surveillance of himself and his attorneys. He charged that both his appearance before the grand jury and the questions asked him were the result of the electronic surveillance and that such surveillance was unlawful. In response, an affidavit by a Department of Justice attorney denied any electronic surveillance. The attorney stated that all national security electronic surveillance authorized by the Attorney General is conducted by the F.B.I. and that his inquiry of the F.B.I. and other agencies which conduct surveillance pursuant to Title III of the Omnibus Crime Control & Safe Streets Act of 1968 revealed that no surveillance occurred. We hold that the government's denial of surveillance was adequate. Proving a negative is, at best, difficult and in our review, a practical, as distinguished from a technical, approach is dictated.

Affirmed.

ALFRED T. GOODWIN, Circuit Judge (dissenting):

Although the full import of United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L.Ed.2d 561 (1974), is not yet evident, I do not believe that it requires us to hold that a witness before a grand jury can be held in civil contempt for refusing to answer questions which were the product of statements coerced from him through torture.

The record contains Weir's uncontroverted allegations that Mexican soldiers obtained statements from him after holding his head under water until he gagged and lapsed into unconsciousness, sticking knives into his legs, buttocks and neck, beating him until he was unconscious, and hanging him from a tree limb by a rope around his neck until he lost consciousness.

In *Calandra* the Supreme Court balanced the potential injury to the historic role and functions of the grand jury against the potential deterrent effect of the judicially created exclusionary rule

of the Fourth Amendment. Here we have no mere hierarchical contest between the Fourth and Fifth Amendments as the majority asserts; rather, we have the government making use of evidence obtained in a manner that cannot be countenanced by a United States court.

I would permit a grand jury witness to refuse to answer questions based upon his confession, if he can show it was obtained through torture. In this way we would refuse to lend judicial sanction to conduct "too close to the rack and the screw to permit of constitutional differentiation." Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). Whereas the Supreme Court was willing to accept judicial entanglement with a technical violation of the Fourth Amendment as the price for the effective and expeditious discharge of the grand jury's duties, I am far from convinced that it would be equally willing to pay the higher price of permitting a grand jury to exploit evidence obtained through conduct that "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Brown v. Mississippi, 297 U.S. 278, 285, 56 S.Ct. 461, 464, 80 L.Ed. 682 (1936).

Nearly nine months elapsed between Weir's first appearance before the grand jury and the contempt adjudication, ample time for a hearing on the coerced confession issue, which Weir estimated would take at most a whole day. A hearing on the coerced confession issue could easily have been held without disrupting the grand jury proceedings any more than they already were delayed by other circumstances. The incremental delay which this hearing would have provided to the effective and expeditious discharge of the grand jury's duties would seem a modest price to pay if in the final result we could put an early end to the use of a coerced confession in a federal court. I trust it is not too rhetorical to suggest that we may rue the day we permitted our own officers to accomplish through foreign proxies a kind of business that is not permitted on our own soil.

I would vacate the contempt judgment and remand for a hearing on Weir's allegations.

CHAMBERS, Circuit Judge (concurring in Circuit Judge WALLACE'S opinion):

It seems to me that Judge Wallace's horse is not quite as black and Judge Goodwin's horse is not quite as white as Judge Goodwin paints them with his streaking language.

All over the country there are efforts today to break down the use of the grand jury as an effective body. The method used is that one keeps it sitting out on a side track while the crew leaves the train and goes off to fight one brush fire after another. One heckles the prosecutor about electronic eavesdropping. One complains that the prosecutor has not produced adequate proof that each of the million or more government employees who might have tapped a person's telephone has not done so.

At a trial of a case out in the open air, if Weir were testifying as a witness I would look closely at his claims of torture in Mexico and whether there was any fruit of a poisoned tree and perhaps I would exclude testimony, founded on abuse, if there was abuse.

Weir has been granted immunity. He has been returned to this country, certainly by the intercession of American authorities. If the dissenter's view prevails and there are barbarous practices across the border, it will do the likes of Weir no good. Next time our government officers will let another Weir just sit in the Mexican jail. Surely our government has not mistreated Weir since he crossed the border. I doubt that he was mistreated by any American agents before he came back.

I would not derail the grand jury with charges so easy to make and so hard to instantly disprove.