UNITED STATES of America,
Plaintiff-Appellee,

v.

Jonathan Edward VIELGUTH, Special Grand Jury Witness, Defendant-Appellant.

No. 74–2193.

United States Court of Appeals,
Ninth Circuit.

July 17, 1974.

Richard H. Chambers, Circuit Judge, dissented and filed opinion.

Donald J. Stang (argued), Doron Weinberg, of Stender, Lapides, Stender & Weinberg, San Francisco, Cal., for defendant-appellant.

Martin Fassler, Berkeley, Cal., submitted a brief amici curiae on behalf of the American Civil Liberties Union and the National Lawyers Guild Electronic Surveillance Project.

Gerard Hinkley, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

OPINION

Before CHAMBERS, BROWNING and CHOY, Circuit Judges.

PER CURIAM:

Appellant was called to testify before a grand jury. He declined to answer certain questions on the ground his answers might incriminate him. He was granted immunity pursuant to 18 U.S.C. §§ 6002 and 6003 and ordered to testify. He appeared before the grand jury, but again refused to answer certain questions.

The government moved that appellant be held in civil contempt pursuant to 28 U.S.C. § 1826(a). Appellant offered the defense that he believed the questions were based upon unlawful electronic surveillance and his answers would be inadmissible under 18 U.S.C. § 2515, citing Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

Appellant submitted two affidavits. The second and more detailed stated:

I believe that the evidence which forms the basis of the questions pro-

pounded to me by the grand jury, and the evidence which I would be required to give in answer to those questions, is inadmissible because it is the primary product of an unlawful act and/or was obtained by the exploitation of an unlawful act, namely illegal electronic surveillance.

My belief as stated above is based upon an analysis of the questions put to me by the grand jury at my previous appearances on January 31 and April 18, 1974. My analysis of these questions shows that they are based either directly or indirectly on materials which could only have been obtained by illegal electronic surveillance of my conversations or of my premises.

The affidavit then identified the telephone numbers, the premises, and the periods of time appellant believed were involved in the alleged electronic surveillance.

In response the government filed two affidavits, one of the attorney and the other of the investigating agent responsible for the grand jury investigations. Each affidavit stated, "To my knowledge, Mr. Vielguth has not been the subject of any illegal electronic surveillance nor were the questions asked him in the Grand Jury based on any illegal electronic surveillance."

The district court rejected appellant's defense on the ground that under this court's holding in United States v. Alter, 482 F.2d 1016 (1973), appellant's affida-vits were not sufficient to constitute a "claim" of unlawful electronic surveillance, and therefore the government was not required to "affirm or deny the occurrence" of such surveillance under 18 U.S.C. § 3504(a)(1).[1] The court did not reach the question of whether, if a sufficient "claim" had been made, the affidavits submitted by the government would have satisfied its obligation to "affirm or deny."

The Court of Appeals for the District of Columbia Circuit has concluded that the government's obligation to affirm or deny the occurrence of electronic surveillance under section 3504(a)(1) "is triggered . . . by the mere assertion that unlawful wiretapping has been used against a party." In re Evans, 146 U.S. App.D.C. 310, 452 F.2d 1239, 1247 (1971). The Court of Appeals for the Second Circuit has agreed. United States v. Toscanino, 500 F.2d 267 (1974).[2] This construction adopts the ordinary meaning of the language of the statute predicating the government's obligation to affirm or deny upon a simple "claim" of inadmissibility. It is supported by the legislative history, which suggests that subsection (a)(1) was added to give to persons under interrogation the legal right to require on mere motion that which the Department of Justice informed Congress it had been affording voluntarily without demand—namely, an examination by the government of its files to determine whether any wiretaps or eavesdropping had occurred.[3] Final-

---

1. 18 U.S.C. § 3504(a) provides:
   In any trial, hearing, or other proceeding in or before any . . . grand jury . . . of the United States—
   (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act. . . .

2. United States v. Doe (Popkin), 460 F.2d 328, 335–336 (1st Cir. 1972), a pre-*Gelbard* decision, appears to take the government's view. However, appellant's counsel states, "Subsequent to *Gelbard*, the First Circuit revised its earlier opinion in an unpublished order requiring the government to affirm or deny. No. 72–1090 (1st Cir., July 12, 1972)." Appellant's Opening Brief at 14. The government has not challenged counsel's statement.

3. The Supreme Court referred to the relevant legislative history in Gelbard v. United States, 408 U.S. 41, 56, 92 S.Ct. 2357, 2365, 33 L.Ed.2d 179 (1972):
   Subsection (a)(1) [of Section 3504] was added at the suggestion of the Department of Justice. At that time the Department followed the practice of searching Government files for information about wiretaps

ly, as Judge Bazelon pointed out in In re Evans, *supra*, there are a number of compelling reasons why Congress would think it wise to require the prosecution to affirm or deny electronic surveillance on no more than a demand by persons who would be aggrieved by such surveillance if it had occurred.[4]

However, the government argues, and the district court held, that this construction of section 3504(a)(1) is precluded by our decision in United States v. Alter, *supra*. The contention is a substantial one. Language in the *Alter* opinion suggests that the government is required to affirm or deny the existence of electronic surveillance only when the aggrieved person has made out a prima facie case that such surveillance has occurred, and that a mere claim of such surveillance is not enough. We conclude, however, that this holding in *Alter* applies only to a claim by the person under interrogation that questions put to him are tainted by unlawful surveillance of conversations in which he did not participate.

Alter claimed unlawful surveillance both of his own conversations and of conversations between his attorney and third persons. The adequacy of Alter's "claim" as to surveillance of his own conversations was not challenged—the government responded with a denial. The adequacy of Alter's "claim" as to conversations between his attorney and third persons *was* challenged. As to this

"claim," the *Alter* court held that a mere assertion of unlawful surveillance of counsel was insufficient; and set out in some detail the prima facie showing required to compel a government response. 482 F.2d at 1026.

The *Alter* court noted that the government objected to Alter's standing with respect to statutory or Fourth Amendment grounds, but conceded Alter's standing to assert interference with Alter's Sixth Amendment right to effective assistance of counsel. 482 F.2d at 1026 n. 16. The government argued, however, that section 3504(a) applied only to Fourth Amendment rights, and that "claims upon Sixth Amendment grounds, not controlled by statute or by previous court decisions, are in the same posture as were Fourth Amendment claims prior to the change by case law and the statutory provisions. Thus, under *Nardone* [308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307] the aggrieved person must have asserted specific facts which if established would have required suppression of the evidence in question. Cohen v. United States, 378 F.2d 751, 760 (C. A. 9), cert. denied, 389 U.S. 897 [88 S. Ct. 217, 19 L.Ed.2d 215]." Brief for the Appellee, Alter v. United States, No. 73–1121, pp. 20–21.

While the *Alter* court did not adopt the government's suggestion that Sixth Amendment "claims" were not governed by section 3504(a), it did accept the argument that a different and more exten-

---

and eavesdropping. The Department advised the Senate Judiciary Committee that while it had been "conduct[ing] such examinations as a matter of policy even in cases where no motion ha[d] been filed . . . defendants should be assured such an examination by a specific requirement of law rather than hav[ing] to rely upon the continued viability of a current policy." *Id.*, at 553. The Senate report on § 3504 explained that "since [subsection (a)(1)] requires a pending claim as a predicate to disclosure, it sets aside the present wasteful practice of the Department of Justice in searching files without a motion from a defendant."

4. Requiring the government to affirm or deny the existence of illegal surveillance of

witnesses imposes only a minimal additional burden upon the government, but requiring a witness to establish the existence of such surveillance may impose a burden on the witness that he can rarely meet, since, to be effective, electronic surveillance must be concealed from its victim. Requiring more than a claim may encourage the development of more secretive means of illegal surveillance, rather than encourage elimination of such unlawful intrusions. Moreover, requiring a witness to disclose details regarding specific conversations that may have been subjected to surveillance would in itself be an invasion of privacy. *See* In re Evans, 146 U.S.App. D.C. 310, 452 F.2d 1239, 1247–1250 (1971).

sive showing must be made before the government can be required to search its files for possible electronic surveillance or eavesdropping of the attorney's conversations with third persons.[5]

There are obvious reasons for such a distinction. The possibility that surveillance of conversations of the witness' attorney with third persons may impinge upon the witness' Sixth Amendment rights is of an entirely different order than the possibility that such surveillance of the witness' *own* conversations may have violated the witness' statutory and constitutional rights of privacy. The witness' Sixth Amendment rights can be implicated only if the attorney's conversations are relevant to his representation of the particular client in the matter at hand, in which case the witness has standing to require an affirmance or denial. The additional showing required by *Alter* is directed at establishing the possibility that electronic surveillance of an attorney's conversations with third persons might fall into this category.[6] These additional requirements may be justified not only because there is a much greater possibility that the claim of electronic surveillance of relevant third-party conversations will prove to be ill-founded, but also because disclosure of such third-party conversations would invade the privacy of additional persons.

One sentence in the *Alter* opinion suggests that the court may have intended to apply the same standard of particularity to a "claim" of violation of the witness' right to privacy. Referring to Alter's affidavits regarding electronic surveillance of his own conversations, the court said, "Alter's affidavits were sufficiently concrete and specific to make a prima facie showing that on the occasions described someone was interfering with his telephone calls and that the F.B.I. was involved." 482 F.2d at 1027. The court continued, "The burden was then on the Government squarely to affirm or to deny *those* charges. (*Cf.* United States v. Fannon (7th Cir. 1970) 435 F.2d 364.) The [Government] affidavit did neither" (emphasis added).

■ As the context indicates, the issue under discussion was not the adequacy of Alter's "claim," but rather the sufficiency of the government's response. The holding was that when a "claim" is made that particularizes incidents of alleged surveillance, it is incumbent upon the government to affirm or deny the specific charges made. In such circumstances, a general, conclusory denial will not do. The *Alter* court did not hold, however, that a more general "claim" would not have been sufficient to require the government to file a response appropriate to such a claim.

---

5. The same distinction appears to have been made in United States v. Fitch, 472 F.2d 548, 549 (9th Cir. 1973). *See also* Beverly v. United States, 468 F.2d 732, 752 (5th Cir. 1972).

6. The showing required by *Alter* is as follows:

To raise a prima facie issue of electronic surveillance of counsel for a grand jury witness, the affidavit(s) or other evidence in support of the claim must reveal

(1) the specific facts which reasonably lead the affiant to believe that named counsel for the named witness has been subjected to electronic surveillance;

(2) the dates of such suspected surveillance;

(3) the outside dates of representation of the witness by the lawyer during the period of surveillance;

(4) the identity of the person(s), by name or description, together with their respective telephone numbers, with whom the lawyer (or his agents or employees) was communicating at the time the claimed surveillance took place; and

(5) facts showing some connection between possible electronic surveillance and the grand jury witness who asserts the claim or the grand jury proceeding in which the witness is involved.

When these elements appear by affidavit or other evidence the Government must affirm or deny illegal surveillance pursuant to 18 U.S.C. sec. 3504(a). 482 F.2d at 1026.

We therefore hold that appellant's affidavits were sufficient to require the government to affirm or deny the occurrence of the alleged surveillance. Since the district court did not reach the question of the adequacy of the government's response, that issue is not before us and we do not consider it.

Reversed.

RICHARD H. CHAMBERS, Circuit Judge (dissenting):

I would affirm. I would follow what was said in the Alter case, United States v. Alter, 482 F.2d 1016 (9 Cir. 1973), rather than telling the district court that it didn't read Alter right. Further, the record shows that defendant says he must have been subjected to electronics surveillance because (his opinion) the grand jury questions "could not have been asked without wire tapping." I would guess that there are 10,000 cases of an informer for every one of electronic surveillance. I would not put the government to its proof on the basis of the legal opinion of Vielguth, which does not exclude the more probable source. Whatever Vielguth did, it has not been suggested that he lived alone in a windowless room and stayed there alone year in and year out.

As to the government's response, if one was required as the majority holds, I would hold now that the response was insufficient. The affidavits are replete with the statement, "To my knowledge." That, to me, is an obfuscation carrying with it all of the clarity of that pitiful phrase, "and/or", so prevalent in the 1930's.

As I have indicated in my concurrence in United States v. Weir, 495 F.2d 879 at 882 (9th Cir. 1974), I think that when the government does the best it can reasonably do in responding to suggestions of illegal electronic surveillance that is usually enough, but "to my knowledge" is a substitute for nothing.