**In re Charles S. HARRIS, a Witness before the Special Grand Jury.**

Crim. Misc. No. 74-52 M.

United States District Court,
N. D. California.

Oct. 25, 1974.

James L. Browning, Jr., U. S. Atty., Robert J. Breakstone, Sp. Atty., U. S. Dept. of Justice, San Francisco, Cal., for petitioner.

Peter G. Keane, Keane & Keane, San Francisco, Cal., for respondent.

## MEMORANDUM

ORRICK, District Judge.

This case is here on the Government's motion to hold Charles S. Harris in civil contempt (28 U.S.C. § 1826(a)) for his continued refusal to answer questions before the Special Grand Jury. For the reasons discussed in detail in the following memorandum, I find Harris in contempt.

Harris first was called before the Special Grand Jury investigating possible violations of 18 U.S.C. § 1951 and 26 U.S.C. § 7201 on August 1, 1974. In response to his assertion of his Fifth Amendment privilege, the Government applied for and was granted an order directing him to testify under the cloak of use plus fruits immunity, 18 U.S.C. §§ 6002, 6003.

Harris again refused to testify at the next meeting of the Special Grand Jury, and was ordered to appear on August 29, 1974, to show cause why he should not be held in civil contempt for his refusal in the face of the Court's order to testify.

On the morning set for the hearing, Harris filed a number of affidavits alleging that he and his attorney had been subjected to unlawful electronic surveillance, and requesting that the Government affirm or deny the surveillance as mandated by 18 U.S.C. § 3504(a)(1). In another affidavit, he contended that the prosecutor had abused the grand jury process by making inflammatory statements to the media regarding the goals of the underlying investigation.

In a Memorandum and Order on September 3, 1974, Judge Robert F. Peckham ruled that the Government was obliged, pursuant to 18 U.S.C. § 3504(a)(1), to affirm or deny the use of electronic surveillance on the witness. Judge Peckham found that the attorney surveillance claim, however, did not meet the five-prong test enumerated in United States v. Alter, 482 F.2d 1016, 1026 (9th Cir. 1973), and accordingly declined to order the Government to affirm or deny as to that purported unlawful activity. Additionally, the Court found the claim of the prosecutor's alleged abuse of the grand jury process to be devoid of merit.

The Order obligated the Government to conduct a thorough search of all logs, reports and records of relevant agencies. The Special Attorney for the Government said that it would take him approximately four weeks to comply.

The matter was then assigned to this Court, and on September 9, counsel for Harris filed a supplemental affidavit alleging unlawful electronic surveillance at his current and former offices. The affidavit purportedly supplied the information Judge Peckham found lacking in his order of September 3. A hearing was held on September 11 and an additional affidavit by counsel was filed that day. At the conclusion of the hearing, the Government was ordered, pursuant to 18 U.S.C. § 3504(a)(1), to affirm or deny electronic surveillance as to counsel as well as to the witness.

At the September 11 hearing, Harris alluded to his suspicion that local authorities, the San Francisco Bureau of Special Services (Bureau), in particular, had engaged in prohibited wiretaps of himself and counsel and had furnished the fruits of this surveillance to the Government for use in the Special Grand Jury investigation. Harris contended that officials of the San Francisco Police Department should be compelled, pursuant to 18 U.S.C. § 3504(a)(1), to affirm or deny the use of electronic surveillance upon the filing of a sufficient claim that the fruits of such alleged surveillance were to be used in this federal investigation. A hearing was held on this question of first impression, and the parties submitted points and authorities directed to its resolution.

## GOVERNMENT RESPONSE

■ The Government has since responded to the September 3 and 11 Orders; the responses are legally sufficient. The Special Attorney by affidavit states that he requested the Racketeering Section of the Criminal Division of the Department of Justice in Washington, D.C. to inform him whether there was "any electronic surveillance of any kind" of Harris and his counsel. The inquiry to Washington enumerated the dates of suspected interception (which had been supplied by Harris and counsel), the addresses of the purported-

ly tapped sites, and the relevant telephone numbers.

The Justice Department transmitted inquiries to the six federal agencies which had previously requested authority to conduct, and had conducted electronic surveillance pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Public Law 90–351, 82 Stat. 197.[1] The Federal Bureau of Investigation, which not only conducts national security electronic surveillance, but maintains records of all such interceptions authorized by the Attorney General, was also contacted.

The responses from the seven agencies and from the Department of Justice were firm and direct. The Department of Justice, in a transmittal from Henry E. Peterson, the Assistant Attorney General, stated that the individuals were "never subjected to electronic surveillance" by the aforenamed agencies and that a review of Department files indicated no interceptions. Typical of the responses from the agencies is the letter from the Bureau of Alcohol, Tobacco and Firearms, in which the Assistant Director in charge of Criminal Enforcement wrote that his department has "never conducted electronic surveillance" on the named individuals.

These direct denials of electronic surveillance must be read in conjunction with the continuing denials and affidavits from the Special Attorney prosecuting this and the underlying investigation protesting that he has neither received nor relied upon any information derived from electronic surveillance in this case.

Although the decisions in this and other circuits have clarified the requisites for a "claim" pursuant to 18 U.S.C. § 3504(a)(1) (*Alter*, supra; United States v. Vielguth (9th Cir. 1974, 502 F.2d 1257); In re Evans, 146 U.S.App. D.C. 310, 452 F.2d 1239 (1971); and United States v. Toscanino, 500 F.2d 267

(2d Cir. 1974)), they have provided little guidance in delineating the elements of a satisfactory Government response. The most detailed discussion of the topic is found in *Alter*, supra, where the court found a Government response inadequate. The affidavit of the Special Attorney there, however, was a form affidavit similar to ones previously criticized by both the Third and Fifth Circuits (*Alter*, supra, 482 F.2d at p. 1027, n. 18). It merely recited that the affiant had directed an inquiry to several named federal agencies and that they reported no wiretaps. The court noted that the affiant failed to furnish any:

" . . . information whatever about the identity of the person or persons with whom he communicated, the substance of his inquiries, or the substance of the replies. He states no facts from which the court could conclude that the six agencies he lists are the only governmental agencies that could have been involved in electronic surveillance. Nor does the affidavit reveal the dates of claimed surveillance to which the inquiries were addressed." Id., 482 F.2d at 1027.

The court stopped short of outlining the elements of a sound affidavit, impliedly leaving that task to the District Court on remand (Id., 482 F.2d at p. 1027, n. 19).

The Government response here does not suffer from the deficiencies of the *Alter* affidavit. The persons contacted in each agency are named, copies of their responses are appended, dates and addresses are listed, and the reason why the seven agencies contacted were selected is set forth. Moreover, the denials of electronic surveillance are unequivocal, and thus do not suffer from the "to my knowledge" defect excoriated by Chief Judge Chambers in his dissenting opinion in *Vielguth*, supra.

*Alter* was followed by In re Weir, 495 F.2d 879 (9th Cir. 1974). *Wier* does not

---

1. The six were: the Internal Revenue Service, the United States Postal Service, the United States Secret Service, the Drug Enforcement Administration, The Bureau of Alcohol, Tobacco and Firearms, and the Bureau of Customs.

discuss in any meaningful detail the requisite contents of a satisfactory government denial. In fact, the court approved a denial which is neither described at length nor appended in a footnote. The opinion merely notes that:

" . . . an affidavit by a Department of Justice attorney denied any electronic surveillance. The attorney stated that all national security electronic surveillance authorized by the Attorney General is conducted by the F.B.I. and that his inquiry of the F.B.I. and other agencies which conduct surveillance pursuant to Title III of the Omnibus Crime Control & Safe Streets Act of 1968 revealed that no surveillance occurred. We hold that the government's denial of surveillance was adequate. Proving a negative is, at best, difficult in our review, a practical, as distinguished from a technical, approach is dictated." Id., 495 F.2d at p. 881.

Whether *Wier* narrowed the *Alter* requirements for a sound denial is open to question, but the instant case need not be the one to answer it. At best, Harris can ask that the Government file a "responsive factual, unambiguous, and unequivocal affidavit" (*Alter*, supra, 482 F.2d at p. 1027). At worst, the Government need only make a reasonable denial. The series of affidavits filed here satisfies the strictest of scrutiny.

## LOCAL GOVERNMENT RESPONSE

The question of whether 18 U.S.C. § 3504(a)(1) compels a *nonfederal* governmental agency to affirm or deny electronic surveillance upon an otherwise sufficient "claim" is one of first impression in this Circuit, if not in the country.

Harris alleges that the Bureau has acted "in close cooperation" with federal agents in the prosecution of the underlying investigation, and notes that at a previous hearing in this matter a member of the Bureau was present in Judge Peckham's courtroom. Counsel's belief is buttressed by his suspicion that the Bureau conducts numerous unlawful wiretaps in its various investigations. Finally, he alleges that since the underlying federal investigation here is aimed at owners and proprietors of so-called adult theatres, and since the Bureau has made numerous arrests of persons connected with those businesses on various state and local obscenity and vice charges, that the Bureau is officially out to get him and his alleged business associates.

Harris has failed to make any credible connection between the Bureau and the Special Grand Jury investigation in this matter. The underlying inquiry here is into possible violations of 18 U.S.C. § 1951 (interference with commerce by threats or violence) and 26 U.S.C. § 7201 (attempt to evade or defeat tax), two federal crimes totally unrelated to the nature of the business the individuals under investigation allegedly pursue. That a member of the Bureau was interested in the case should not serve to prejudice or taint the federal investigation of federal offenses.

Scrutinizing Harris' contentions regarding purported Bureau wiretaps, I find that there are actually three separate claims asserted. First, that the United States, as the opponent of the claim, should affirm or deny reliance on information obtained from the Bureau which was the product of unlawful electronic surveillance; second, that the Bureau itself must affirm or deny the charge; and, third, that the Court should hold an evidentiary hearing to determine whether the Bureau has conducted unlawful surveillance and whether the Government has relied on the fruits of that covert activity.

## FEDERAL AFFIRMANCE/DENIAL

Subsection (a)(1) of Section 3504 compels "the opponent" of a "claim by a party aggrieved" by alleged unlawful electronic surveillance to affirm or deny the occurrence and use of such surveillance. The Government, as the opponent of Harris' claim, does not argue that it should not have to affirm or deny hav-

ing received or relied upon information from the Bureau. In fact, both the Special Attorney prosecuting this and the underlying action and the Internal Revenue Service Special Agent who headed the investigative portion of the inquiry have denied the claim under oath. Their denials are direct and unequivocal.

## THE BUREAU'S AFFIRMANCE OR DENIAL

Harris does not cite any authority for his contention that the Bureau is obligated to affirm or deny surveillance pursuant to 18 U.S.C. §' 3504(a)(1); nor could he. The legislative history of that subsection is surprisingly straightforward. As noted in Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L. Ed.2d 179 (1972), the provision was enacted at the suggestion of the Department of Justice. That agency, at the time, employed the practice of searching its files for wiretaps in each case it was prosecuting whether or not a request for such an inquiry had been made. It was thought that writing the requirement into the United States Code would both insure to the public that the Department would conduct such a search in every reasonable case, and would save the Department the time and expense of checking in those cases in which a claim was not raised (Id., 408 U.S. at p. 56, 92 S. Ct. 2357, 33 L.Ed.2d 179).

■ Thus, the subsection cannot be read to require other, nonfederal, agencies to check their files upon the filing of a claim. The claim requirement has been liberally construed by the courts in an effort to comply with the legislative intent (See, *Vielguth*, supra, at n. 3), but that intent was to codify existing Department of Justice procedure (*Vielguth*, supra; *Gelbard*, supra).

Harris refers the Court to another civil contempt case pending in this district, In re: Jonathan E. Vielguth, a Witness Before the Special Grand Jury, Criminal Misc. No. 74–25 M. There, the witness made' an argument similar to Harris', and the Government complied by producing the denial of a member of the San Mateo County Sheriff's Office. The Government's voluntary compliance with Vielguth's request does not serve as a precedent for Harris' proposed reading of 18 U.S.C. § 3504, although it does serve to point out that much delay and discomfort in the instant case could have been avoided if the Government had furnished the requested answer gratuitously.

## EVIDENTIARY HEARING

■ This is not to say that the Government may rely on unlawful wiretaps in conducting a grand jury investigation (*Gelbard*, supra, 408 U.S. at p. 47, 92 S. Ct. 2357, 33 L.Ed.2d 179). Harris contends that he is entitled to subpoena the Commander of the Bureau to a hearing to determine whether that agency has conducted the alleged unlawful electronic surveillance. The contention is without merit. Unlike a motion under 18 U.S.C. § 3504 which requires a mere claim to trigger a government response, the motion for an evidentiary hearing requires a showing that it is not frivolous. The record is barren of anything to indicate that the Bureau tapped Harris or his counsel, that such mythical taps were transmitted to the Special Attorney prosecuting the underlying investigation, or that the Special Attorney relied on this information in formulating his questions to Harris.

In fact, the evidence, in the form of the unequivocal denials by the Special Attorney and the Internal Revenue Service Agent, emphatically contradicts the assertion. Still, a hearing would be in order if Harris' motion were based on anything but speculation—but it is not. He has premised the motion on hypothesis and conjecture and thus I feel that a hearing would be fruitless and would serve little function other than to stall the underlying investigation even longer.

■ I therefore find that Harris' continued refusal to answer lawful questions before the Special Grand Jury, despite his court-approved use plus fruits immunity, constitutes civil contempt. The Court has been patient in insuring

that the witness' statutory and constitutional right to be free from prying government surveillance has been safeguarded, but now all avenues of inquiry in that regard have been exhausted. The investigation has been delayed almost three months by meritless wiretapping claims, and it is now time for it to proceed.

The witness is remanded to the custody of the United States Marshal for the life of the Special Grand Jury or until he decides to answer the questions propounded to him.