In re Grand Jury Witness.

Nancy (Michelle) WHITNACK, Appellant,

v.

UNITED STATES of America, Appellee.*

No. 76-3138.

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1976.

*Association of Insurance Agents v. Board of Governors of the Federal Reserve System,* published in the advance sheets at this citation (544 F.2d 1245) was withdrawn from the bound volume at the request of the court.

**1246**

John Ziegler, Seattle, Wash., for appellant.

Stan Pitkin, U.S. Atty., Seattle, Wash., for appellee.

Before TRASK, GOODWIN and KENNEDY, Circuit Judges.

GOODWIN, Circuit Judge:

The narrow issue in this appeal from an adjudication of contempt and resulting imprisonment is whether a witness may, by the "mere assertion" that her grand-jury subpoena was the primary product of an illegal wiretap, successfully resist the grand jury's demand for nontestimonial evidence, in this case, fingerprints and handwriting samples.

The case does not involve the production of testimonial evidence. *See Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *United States v. Vielguth*, 502 F.2d 1257 (9th Cir. 1974). This witness simply refused to make or furnish a handwriting sample, and refused to allow her fingerprints to be taken.[1] Her sole basis for her refusal to furnish these items of tangible evidence was that she said she believed that a telephone at a house where she lived had been wiretapped.

The government chose not to answer the wiretap allegation with the detailed disclaimer required when a witness files a nonfrivolous affidavit that the evidence sought is based upon illegal wiretap intelligence.[2] *See, e. g., United States v. Vielguth, supra.*

The government chose, instead, to meet the assertion by arguing, in the manner of a demurrer, that the grand jury's interest in the handwriting and fingerprints of this witness could not be the "primary product" of any wiretap, if there had been one.

It appears from the record in this case that the government was interested in the fingerprints and handwriting exemplars of one or more persons known to be closely associated with a person who had blown himself up while trying to plant a bomb. It also appears, from the appellant's affidavit and elsewhere in the record, that the appellant had been the object of police surveillance. The most cursory surveillance would have discovered that the appellant lived with, or spent a good deal of time at the home of, the deceased bomb handler. That fact alone might have explained the grand jury's curiosity about the identity of the makers of handwriting and fingerprints then in the possession of those charged with investigating the attempted bombing and other possible felonies.

The appellant has provided no rational basis for believing that a wiretap of her friend's house, if there was one, had anything to do with the grand jury's felt need for fingerprint and handwriting evidence. Because the appellant has suggested no causal connection between any monitoring of her friend's telephone and the grand jury's request for the evidence sought to be produced, we do not reach the question of the appellant's standing to challenge the eavesdropping, if any, of a telephone she

---

1. She also refused to stand in an identification lineup, but this point was made moot when she was subsequently placed in a lineup against her will.

2. 18 U.S.C. § 3504(a) provides:

    "In any trial, hearing, or other proceeding in or before any * * * grand jury * * of the United States—

    (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act. * * * * "

does not claim as her own or even allege she ever used.

We hold only that when the grand jury asks for fingerprints or handwriting samples that are not otherwise precluded by some rule of law, the consequences of contempt cannot be avoided simply because the recalcitrant witness believes that somebody's telephone may have been the object of illegal electronic surveillance.

The judgment is affirmed.

ANTHONY M. KENNEDY, Circuit Judge, concurring:

Appellant argues that under *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), she has the right to refuse to satisfy the inquiries of the grand jury since, in her opinion, they are based upon the product of illegal wiretaps, and that, concomitant with this right, she may refuse to comply with the demands of the grand jury so long as the Government does not, as required by 18 U.S.C. § 3504(a), affirm or deny the existence of these wiretaps. Where it is clear that the demands of the grand jury are predicated on evidence obtained by the Government independently of any illegal wiretaps, I agree that a witness has no standing to invoke the *Gelbard* rule or to insist that the Government affirm or deny under section 3504(a). Because the grand jury demands were undoubtedly supported by legitimate independent grounds, which the most cursory surveillance of Whitnack's whereabouts could verify, I concur in the judgment of the court.

I cannot agree, however, with the suggestion that simply because the grand jury demanded nontestimonial evidence, the Government need not respond as required by section 3504 to allegations of illegal wiretapping. Such nontestimonial evidence, as well as testimonial evidence, may be "evidence derived" from illegally intercepted communications within the meaning of 18 U.S.C. § 2515. In enacting the wiretap legislation comprising sections 2515 and 3504, Congress intended to provide safeguards against violations of the privacy in-

terests guaranteed by the fourth amendment. *See Gelbard v. United States*, 408 U.S. at 50–53, 92 S.Ct. 2357, 33 L.Ed.2d 179. The manifest purpose of section 3504 is to provide procedures that insure that the Government fully complies with the mandate of section 2515, which proscribes the use in any official proceeding of evidence that is the product of illegally intercepted communications. While the testimonial nature of the evidence sought may be critical in analyzing cases involving the fifth amendment privilege against self-incrimination, the nature of the evidence is immaterial in a case like this, where the primary consideration is whether the demands of the grand jury are tainted on fourth amendment grounds.