Osamu MISHIMA, Katuji Moriya, Akinori Ikeda, Tomomi Sasaki, and Hiroshi Umeda, Petitioners,

v.

UNITED STATES of America and United States Coast Guard, Respondents.

Civ. No. A 80–142.

United States District Court, District of Alaska.

Feb. 11, 1981.

Gilmore & Feldman by Jeffrey M. Feldman, Anchorage, Alaska, for petitioners.

Rene J. Gonzalez, Acting U. S. Atty., District of Alaska by James L. Swartz, Asst. U. S. Atty., Anchorage, Alaska, LCDR James B. Friderici, Asst. Legal Officer, 17th Coast Guard District, of counsel, for respondents.

## OPINION

FITZGERALD, District Judge.

This is an application by five Japanese seamen to quash subpoenas issued by the United States Coast Guard in connection with an investigation by that agency into the grounding of the M/V RYUYO MARU NO. 2 on November 8, 1979. The seamen have refused to testify, asserting their Fifth Amendment privilege against self-incrimination. The petitioners assert that their testimony could tend to incriminate them under Japanese law.[1] The case raises the important issue of whether or not the Fifth Amendment protects against self-incrimination for acts made criminal by the laws of a foreign nation.

In *Zicarelli v. N. J. Investigation Commission*, 406 U.S. 472, 478–80, 92 S.Ct. 1670, 1675–76, 32 L.Ed.2d 234 (1972) the Supreme Court indicated that one invoking the Fifth Amendment privilege has the burden of establishing, first, that the subject of the government's questions raises "a real danger of being compelled to disclose information that might incriminate him under foreign law," and second, that there is a "real and substantial fear of foreign prosecu-

---

1. The petitioners face no threat of prosecution under American law because the government is prepared to offer them immunity from any domestic prosecution that might result from use of their testimony at the Coast Guard proceedings.

tion." *See also United States v. Yanagita,* 552 F.2d 940, 946 (2d Cir. 1977).[2]

The petitioners meet the first prong of the test. Article 129 of the Penal Code of Japan provides:

1. A person, who by negligence causes danger to the movement of a train, electric car, or vessel, or upsets or destroys a train or electric car or capsizes or destroys a vessel, shall be punished with a fine of not more than 100,000 yen.

2. When an offender under the preceding paragraph is engaged in the performance of his occupational duties, he shall be punished with imprisonment for not more than 3 years or a fine of not more than 200,000 yen.

This provision is applicable to incidents occurring outside of Japanese waters and has resulted in prosecution and imprisonment of crewmen on previous occasions where vessels were grounded.[3] Ordinary negligence is sufficient to establish a violation of Article 129. Thus the Coast Guard inquiry concerning the grounding of the RYUYO MARU NO. 2 raises a real danger to petitioners of being compelled to disclose information that might incriminate them under foreign law.

The evidence also shows that the Japanese Maritime Safety Authority has conducted an investigation into the grounding of the RYUYO MARU NO. 2, has ruled that the captain and second engineer were at fault, and has sent the case to the public procurator's office. Shun-ichi Tagawa, a Japanese attorney familiar with Article 129 lawsuits, testified that he believed these petitioners faced a strong possibility of prosecution.[4]

■ The cases of Katuji Moriya, Akinori Ikeda, and Hiroshi Umeda have not, however, been referred to the prosecutor by the Japanese Maritime Safety Agency. Thus, it appears unlikely that these three petitioners risk prosecution. I conclude that petitioners Moriya, Ikeda and Umeda have not demonstrated a "real and substantial" fear of prosecution and thus cannot invoke the Fifth Amendment privilege. *United States v. Yanagita,* 552 F.2d at 946.

As I have noted, the cases of the master of the vessel, Osamu Mishima, and the second engineer, Tomomi Sasaki, have been referred to the prosecutor. As to them, I conclude that a real and substantial fear of prosecution under Article 129 of the Penal Code of Japan exists.

■ The government argues that Osamu Mishima[5] has waived any privilege he might assert by testifying before the Japanese Maritime Safety Agency. However, the waiver of Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs. *United States v. Licavoli,* 604 F.2d 613, 623 (9th Cir. 1979).[6] Therefore, as to both Mishima and Sasaki, the ultimate constitutional question of whether the self-incrimination privilege provides protection to a witness who reasonably fears prosecution in a foreign nation must now be decided.

This precise question has not been decided in the Ninth Circuit[7] although Judge

---

2. In *Zicarelli* and in *Yanagita* the constitutional issue concerning the scope of the privilege was never reached because the petitioners failed to demonstrate any threat of prosecution.

3. In the case of the SHOWA MARU the master and chief officer were prosecuted and sentenced to be imprisoned for 10 months and 8 months respectively under Article 129. Affidavit of Yoichi Ogawa submitted in support of petitioners' motion to quash.

4. Mr. Tagawa testified at an evidentiary hearing held September 3, 1980.

5. The question of waiver does not arise with regard to Tomomi Sadaki since he did not testify before the Japanese Maritime Safety Agency.

6. *Cf. United States v. Seifert,* Nos. 79–1405 & 79–1458, slip op. at 1408 (9th Cir. Dec. 19, 1980) (*Privilege not waived by non-defendant witness even within same proceeding where further incrimination may occur.*

7. The issue has arisen in this circuit only in cases in which grand jury testimony has been sought. *See e. g., In re Campbell,* 628 F.2d 1260 (9th Cir. 1980); *In re Federal Grand Jury Witness,* 597 F.2d 1166 (9th Cir. 1979); *In re Weir,* 495 F.2d 879 (9th Cir. 1974). The circuit

Hufstedler, in dictum, indicated that she would hold the privilege applicable. *See In re Federal Grand Jury Witness*, 597 F.2d 1166, 1168–69 (9th Cir. 1979) (Hufstedler, concurring). It was not necessary, however, for the court in that case to reach the question now presented since the witness there had been immunized and the Secrecy Rule governing grand jury proceedings was applicable.

The Tenth Circuit in *In Re Parker*, 411 F.2d 1067, 1070 (1969) upheld the ruling of the district court holding a witness in civil contempt for refusing to obey an order directing the witness to answer questions before a grand jury. The witness had been granted immunity from both federal and state prosecution which adequately protected her against the danger of self-incrimination in all courts within the United States. Nevertheless, the witness claimed that the questions, if answered, would subject her to risk of prosecution in Canada. Her claim of privilege was rejected by the court for two reasons. Rule 6(e) of the Federal Rules of Criminal Procedure prevents disclosure of matters occurring before a grand jury unless otherwise ordered by the court. Any evidence given by the witness before the grand jury would have been unavailable to the Canadian government by application of the rule. However, the court went on to say, after assuming that the evidence would be incriminating to the witness in Canada, that the Fifth Amendment privilege did not apply. In reaching this result the Tenth Circuit distinguished *Murphy v. Waterfront Commission of New York*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). In that case Justice Goldberg, writing for the majority of the Court, traced the history and importance of the privilege against self-incrimination and approved early English cases where the privilege was thought applicable to "a foreign jurisdiction" or "coun-

try." Nevertheless, the Tenth Circuit in *Parker* summarily rejected the reasoning of Justice Goldberg as an "argumentative analogy to this nation's state-federal relationship [carrying] no further persuasion." 411 F.2d at 1070.

However, the rationale of *Murphy* cannot be so easily dismissed. Justice Goldberg carefully examined not only the early English and American cases but reviewed the underlying policy calling for the privilege:

It reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates "a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load," . . .

378 U.S. at 55, 84 S.Ct. at 1596–97 (citations omitted). After tracing the development of the privilege in English law, Justice Goldberg concluded that the most recent authoritative announcement of the English rule was to be found in *United States of America v. McRae*, L.R., 3 Ch.App. 79 (1867):

. . . where the Court of Chancery Appeals held that where there is a real danger of prosecution in a foreign country, the case could not be distinguished "in principle from one where a witness is protected from answering any question which has a tendency to expose him to

---

has held in these cases that the secrecy provisions of Rule 6 of the Federal Rules of Criminal Procedure afford sufficient protection to a witness that his testimony will not be disclosed to authorities in foreign jurisdictions. *But see In re Federal Grand Jury Witness*, 597 F.2d 1166, 1168–69 (Hufstedler, concurring); *In re Cardassi*, 351 F.Supp. 1080 (D.Conn.1972). Because

the circuit has held that grand jury secrecy provisions shield a witness from the threat of foreign prosecution, the applicability of the privilege as a matter of constitutional law has not been addressed. The Coast Guard proceedings at issue in this case do not provide for such secrecy and seem to anticipate public hearings. *See* 46 C.F.R. § 4.01–1 *et seq.*

forfeiture for a breach of our own municipal law." [*Id.* at 87] 378 U.S. at 67, 84 S.Ct. at 1607.

A correct understanding of English precedent has great significance since in *Hale v. Henkel,* 201 U.S. 43, 69, 26 S.Ct. 370, 377, 50 L.Ed. 652 (1906) the Supreme Court reached the conclusion that the English rule limited the privilege to the same jurisdiction under the same sovereign. The careful analysis of the English cases undertaken in *Murphy* demonstrated that the conclusion in *Hale* was simply wrong. 378 U.S. at 67, 84 S.Ct. at 1603. Accordingly, the Court rejected the narrow application of the privilege as stated in *Hale* and approved, instead, the broader construction given by English courts, such as *McCrae,* and by our own courts in opinions by Chief Justice Marshall[8] and Justice Holmes.[9]

In *In re Cardassi,* 351 F.Supp. 1080 (D.Conn.1972), Judge Newman held that the privilege applies as a protection against foreign prosecution. He grounded the pertinent part of his thorough discussion in the Supreme Court's *Murphy* analysis.[10] Judge Hufstedler has indicated her approval of the *Cardassi* reasoning. *In re Federal Grand Jury Witness,* 597 F.2d at 1169 (dictum). I agree.

■ I conclude therefore that a claim of Fifth Amendment protection may validly be asserted[11] by petitioners Mishima and Sasaki in the underlying Coast Guard proceedings as a protection against the threat of prosecution in Japan.[12] This, however, does not give petitioners a blanket immunity to refuse to answer *all* questions at the Coast Guard inquiry. The privilege extends only to specific questions which would tend to incriminate petitioners in any Japanese prosecution. *Zicarelli v. New Jersey Investigation Commission,* 406 U.S. at 479–80, 92 S.Ct. at 1675–76; *United States v. Yanagita,* 552 F.2d at 946–47. All other questions must be answered. Petitioners should appear at the Coast Guard inquiry and may assert the privilege only to specific questions. Consequently, the motion to quash must be denied.

In accordance with this opinion, petitioners' motion to quash the Coast Guard's subpoenas is DENIED.

---

8. *United States v. Saline Bank of Virginia,* 1 Pet. 100, 104, 26 U.S. 100, 7 L.Ed. 69 (1828).

9. *Ballmann v. Fagin,* 200 U.S. 186, 195, 26 S.Ct. 212, 214, 50 L.Ed. 433 (1906).

10. *Cardassi's* significance in the present case rests upon this analysis and holding since its ultimate holding would not be followed in this circuit. *Cardassi* allowed a witness to claim the privilege before a grand jury since prosecution in Mexico was possible, a result which the Ninth Circuit's Secrecy Rule approach prevents.

11. The government may still compel petitioners' testimony if it can demonstrate that Japan will respect any grant of immunity which the United States confers. *United States v. Yanagita,* 552 F.2d at 946.

12. It is not necessary at this time to consider whether a claim of privilege may be asserted under the Fifth Amendment by a foreign national who might be compelled to otherwise disclose the testimony within the foreign jurisdiction. Since the American occupation of Japan, that nation has recognized the privilege of self-incrimination.